[No. 35067-0-II. Division Two. July 10, 2007.]

PAUL M. MATHESON, *Appellant*, v. CHRISTINE GREGOIRE, *as Governor*, ET AL., *Respondents*.

*Robert E. Kovacevich* (of *Robert E. Kovacevich, PLLC*), for appellant.

*Robert M. McKenna, Attorney General,* and *Heidi A. Irvin* and *David M. Hankins, Assistants*; and *John H. Bell* (of *Puyallup Indian Tribe*), for respondents.

¶1 PENOYAR, J. — The Puyallup Tribe (Tribe) and the Washington State Department of Revenue entered into an agreement (Agreement) regulating imposition of taxes on cigarette sales in Indian country.[1] Paul Matheson, a tribal member and cigarette retailer, sued both the State and the Tribe, alleging that the Agreement was illegal on several grounds. The trial court dismissed the Tribe as a defendant due to its sovereign immunity. Then, finding that the Tribe was an indispensable party, it dismissed the complaint altogether. Matheson appeals, arguing that the trial court erred in finding the Tribe indispensable and in dismissing the case. The trial court was correct in recognizing the Tribe's sovereign immunity and in finding that it was an indispensable party. We affirm.

## FACTS

¶2 On April 20, 2005, the Tribe entered into an Agreement with the State governing the taxation of cigarettes sold by the Tribe and tribally-licensed retailers in Indian country. The Washington Legislature previously authorized the governor to enter into such an Agreement, and the Agreement took effect immediately. See RCW 43.06.465.

¶3 The Tribe agreed to impose and maintain a retail tax on cigarettes that would increase in lockstep with any future increase in the State cigarette tax. In return, the State agreed to waive its right to collect State cigarette sales and use taxes on transactions from "the Tribe, Tribally-licensed retailers, state licensed wholesalers . . . or

---

[1] The Agreement defines "Indian Country" to encompass all land within the Puyallup Indian Reservation, including all patent lands, trust lands, and rights of way. Clerk's Papers at 99; see 18 U.S.C. § 1151.

retail buyers." Clerk's Papers at 101. Additionally, the Tribe agreed to provide the State 30 percent of the revenue from the new cigarette tax. The Agreement also (1) limits the Tribe and tribally-licensed retailers' acquisition of cigarettes to wholesalers or manufacturers licensed by the State to sell cigarettes wholesale and (2) requires that all cigarettes sold by tribally-licensed retailers and the Tribe bear a tribal tax stamp that includes the wholesaler's serial number. The Tribe also agreed to impose the tax on sales to tribal members.

¶4 The State and the Tribe divided enforcement responsibilities under the Agreement—the State agreed to enforce against non-Tribal and nonmember wholesalers, and the Tribe agreed to enforce against member retailers.

¶5 On May 10, 2005, Matheson filed a complaint in Thurston County Superior Court against both State[2] and Tribal[3] defendants for injunctive relief, declaratory judgment, and damages. In his complaint, he requested in part that the court (1) find RCW 43.06.450-.460 (granting the governor the authority to enter the Agreement) unlawful and unenforceable; (2) hold any resulting agreement unenforceable; (3) enjoin the State and Tribal defendants from either reaching an agreement or enforcing it; and (4) grant him monetary damages, costs, and attorney fees. He later filed an amended complaint but neglected to either file a motion to amend or obtain the State's consent to amend. Therefore, the trial court granted the State's motion to strike the complaint.[4]

---

[2] State defendants included Governor Gregoire, the director and assistant director of the Washington State Department of Revenue, the Washington State Department of Revenue, the Tobacco Tax Control Enforcement program manager, the Washington State Liquor Control Board, and the State of Washington (herein referred to as "the State").

[3] Tribal defendants included Cigarette Compact Department Administrator Chad Wright and the Tribe.

[4] Matheson also filed a motion for injunctive relief on August 31, 2005, to prevent implementation of the Agreement. The trial court denied the motion, and Matheson filed a motion for reconsideration on January 3, 2006. The trial court

¶6 The Tribe filed a motion to dismiss, which the State defendants joined, arguing that it and its officials were protected from suit due to sovereign immunity. The State later filed another motion to dismiss, arguing that the Tribe was an indispensable party under CR 19. On May 26, 2006, the trial court dismissed the Tribe on the basis of sovereign immunity, found that it was an indispensable party, and therefore dismissed the State. Matheson filed a motion for reconsideration, which was denied on June 9, 2006.

¶7 However, two days before the court's decision on his motion for reconsideration, Matheson filed a motion to serve a second supplemental complaint, noting it for hearing on July 7, 2006. In this new complaint, Matheson added a new plaintiff and two new State defendants, removed all Tribal defendants, and asked for a refund of cigarette taxes paid.

¶8 On July 6, 2006, one day before the scheduled motion hearing, Matheson filed a notice of appeal of the trial court's order denying his motion for reconsideration. The next day, the parties stipulated that the trial court would not consider Matheson's second supplemental complaint due to this appeal.

## ANALYSIS

I. Dismissal of Tribal Defendants—Tribal Sovereign Immunity

A. Sovereignty Issues Raised by Matheson

¶9 Matheson generally assigns error to the trial court's dismissal of his complaint, but he fails to specifically assign error to the trial court's dismissal on the basis of sovereign immunity. Indeed, he does not specifically address the Tribe's sovereign immunity in his opening brief but instead makes claims regarding only "antitrust immunity" and "tribal sovereignty." Appellant's Br. at 16, 18. While Matheson does address tribal sovereign immunity in his reply briefs, none of these arguments are persuasive.

denied the motion for reconsideration nine days later, concluding that Matheson failed to show either manifest error or new facts or legal authority.

¶10 For example, Matheson contends that the Tribe's sovereign immunity "has been waived by ceding control to the State to regulate on-reservation tribal retailers." 1 Appellant's Reply Br. at 6.[5] However, to support this claim, he does not rely on a case regarding tribal sovereign immunity but on a case addressing a tribe's assertion of jurisdiction over nonmembers. *See Cordova v. Holwegner*, 93 Wn. App. 955, 966, 971 P.2d 531 (1999). Matheson then states that "jurisdiction determines immunity in this case," but he offers no legal authority or precedent to support that statement. 1 Appellant's Reply Br. at 7.

¶11 Matheson later states that "[t]he contemporary rule is that the Puyallup Tribe has no immunity when it has no jurisdiction to tax since Indians no longer have a right to govern persons other than themselves." 1 Appellant's Reply Br. at 9. He then cites *Montana v. United States*, 450 U.S. 544, 565, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981), for the proposition that "inherent sovereign powers of an Indian tribe do not extend to the activities of non-members of the tribe." 1 Appellant's Reply Br. at 9. This statement neither supports Matheson's "contemporary rule" nor has any application or bearing on the issue of the Tribe's sovereign immunity.

¶12 Additionally, Matheson argues that the Tribe's agreement to raise its tax automatically, in lockstep with the State, constitutes "off-reservation conduct and joint control." 2 Appellant's Reply Br. at 2. Matheson appears to contend that the Tribe is subject to State law when it goes off-reservation, but this is unclear. He states that "[w]here joint control is shared by agreement, a tribe has no immunity," but again does not offer legal authority to support that statement. 2 Appellant's Reply Br. at 2.

¶13 Matheson relies on a recent United States Supreme Court case, *Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95, 126 S. Ct. 676, 163 L. Ed. 2d 429 (2005), for the

---

[5] Matheson submitted two reply briefs, separately addressing the State's and the Tribe's responses. "1 Appellant's Reply Br." refers to his reply to the State; "2 Appellant's Reply Br." refers to his reply to the Tribe.

proposition that "taxing non-Indian wholesalers who sold to on-reservation Indians did not violate tribal sovereignty." Appellant's Br. at 18. Matheson confuses a violation of tribal sovereignty with a waiver of tribal sovereign immunity. In *Wagnon,* the tribe was the plaintiff—the opinion does not discuss the issue of tribal sovereign immunity. Furthermore, *Wagnon* did not address a tax mutually agreed to by a tribe and the state but a state tax imposed on gasoline distributors (not retailers), both on and off the reservation. *Wagnon,* 546 U.S. at 99-100.

¶14 Matheson also argues that the Tribe had no immunity from suit "as it had no congressional permission to enter into the contract." 2 Appellant's Reply Br. at 7. He contends that the Tribe should have remained a party to the declaratory judgment claim because it was a participant in price fixing. These arguments fail to grasp the fundamental nature of sovereign immunity, which does not prevent sovereigns from entering into contracts but, instead, protects them from lawsuits. Sovereign immunity protects a tribe from suit absent an unequivocal waiver. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978).

¶15 Finally, Matheson claims that "the Puyallup Tribe went off the reservation to require Matheson to buy his inventory exclusively from wholesalers licensed by the [S]tate" and therefore the Tribe is subject to state court jurisdiction. 2 Appellant's Reply Br. at 2. However, neither the record nor the cases Matheson relies on support this proposition. Tribal sovereign immunity protects tribes from suits arising from both governmental and commercial activities, whether conducted on or off a reservation. *Wright v. Colville Tribal Enter. Corp.,* 159 Wn.2d 108, 112, 147 P.3d 1275 (2006) (citing *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.,* 523 U.S. 751, 754-55, 760, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1998)).

B. Application of Sovereignty Principles

¶16 Personal jurisdiction over a party asserting tribal sovereign immunity is a question of law we review de novo.

*See Anderson & Middleton Lumber Co. v. Quinault Indian Nation*, 130 Wn.2d 862, 876, 929 P.2d 379 (1996).

¶17 Under federal law, tribal sovereign immunity comprehensively protects recognized American Indian tribes from suit absent explicit and "unequivocal" waiver or abrogation. *See Wright*, 159 Wn.2d at 112 (citing *Santa Clara Pueblo*, 436 U.S. at 59). " 'As domestic dependent nations,' Indian tribes 'exercise inherent sovereign authority over members and territories,' including sovereign immunity from suit, 'absent a clear waiver by the tribe or congressional abrogation.' " *Wright*, 159 Wn.2d at 112 (quoting *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991)). As noted above, "[t]ribal sovereign immunity protects tribes from suits involving both 'governmental and commercial activities,' whether conducted 'on or off a reservation.' " *Wright*, 159 Wn.2d at 112 (quoting *Kiowa Tribe*, 523 U.S. at 754-55, 760).

¶18 We recognize that the Fifth Circuit has held that *Kiowa Tribe* preserves tribal sovereign immunity from damage awards only; under that rule, tribal immunity does not protect tribes from declaratory and injunctive relief. *See Comstock Oil & Gas v. Ala. & Coushatta Indian Tribes of Tex.*, 261 F.3d 567, 571-72 (5th Cir. 2001); *TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676, 680-81 (5th Cir. 1999). However, neither the Ninth Circuit nor Washington State has adopted a similar rule—*Wright* preserved tribal sovereign immunity in the face of a suit for damages but did not address any equitable claims. *See Wright*, 159 Wn.2d at 111-12.

¶19 Because Matheson requested both equitable relief and damages, sovereign immunity protects the Tribe from his suit, even under the narrow Fifth Circuit rule. Furthermore, the Tribe did not waive its sovereign immunity; the Agreement specifically states that nothing in it shall be construed as a waiver, in whole or in part, of either party's sovereign immunity.

¶20 The Ninth Circuit carved out an exception to absolute sovereign immunity in *Burlington Northern Railroad v. Blackfeet Tribe*, 924 F.2d 899, 901 (9th Cir. 1991), *overruled on other grounds by Big Horn County Electric Cooperative, Inc. v. Adams*, 219 F.3d 944 (9th Cir. 2000). In cases seeking merely prospective relief, sovereign immunity does not extend to tribal officials acting pursuant to an unconstitutional statute. *Burlington N. R.R.*, 924 F.2d at 901; *see also Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1159 (9th Cir. 2002). However, tribal sovereign immunity continues to protect individual tribal officials acting in their representative capacity and within the scope of their authority. *See Wright*, 159 Wn.2d at 116; *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479 (9th Cir. 1985).

¶21 Here, Matheson named Chad Wright individually in his official capacity as the Tribe's cigarette tax director. Still, no exception applies because Matheson seeks damages and equitable relief, not merely prospective relief. Therefore, both the Tribe and Wright are protected by sovereign immunity; the trial court did not err in dismissing them, and we affirm.

II. DISMISSAL OF STATE DEFENDANTS—NECESSARY/INDISPENSABLE PARTY

¶22 Matheson argues that the trial court erred by dismissing the State defendants after it determined that the Tribe was an indispensable party. Specifically, he argues that (1) the trial court erred in holding that the Tribe was an indispensable party and (2) the State defendants should not have been dismissed.[6]

¶23 Our Supreme Court recently held that the appropriate standard of review for a trial court's dismissal

---

[6] Matheson also repeatedly mentions the trial court's lack of consideration of his second supplemental complaint as additional error. This issue is addressed in further detail below, but the trial court did not commit error—because the trial court did not issue a final judgment on Matheson's motion to serve his second supplemental complaint, the arguments contained therein are not preserved for review.

under CR 12(b)(7) for failure to join an indispensable party under CR 19 is abuse of discretion. *Gildon v. Simon Prop. Group, Inc.*, 158 Wn.2d 483, 493, 145 P.3d 1196 (2006). Any legal conclusions underlying the decision are reviewed de novo. *Gildon*, 158 Wn.2d at 493.

¶24 A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Gildon*, 158 Wn.2d at 494. An abuse of discretion is found if the trial court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law. *Gildon*, 158 Wn.2d at 494. Dismissal under CR 12(b)(7) is a drastic remedy, and trials on the merits are preferred, so dismissal is employed sparingly when there is no other ability to obtain relief. *Gildon*, 158 Wn.2d at 494.

¶25 Under CR 19, a trial court undertakes a two-part analysis. First, the court must determine whether a party is needed for just adjudication. *See Gildon*, 158 Wn.2d at 494 (citing *Crosby v. Spokane County*, 137 Wn.2d 296, 306, 971 P.2d 32 (1999); CR 19(a)). "Second, if an absent party is needed but it is not possible to join the party, then the court must determine whether in 'equity and good conscience' the action should proceed among the parties before it or should be dismissed, the absent party being thus regarded as indispensable." *Gildon*, 158 Wn.2d at 495 (citing *Crosby*, 137 Wn.2d at 306-07; CR 19(b)).

¶26 The CR 19 factors to be considered include: (1) the extent a judgment rendered in the party's absence might be prejudicial to him or those already parties; (2) if there is prejudice, the extent to which, by protective provisions in the judgment, by shaping of relief, or by other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the party's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. CR 19(b); *e.g., Crosby*, 137 Wn.2d at 306-07. In analyzing whether a party is a necessary and indispensable party, CR 19 " 'calls for deter-

minations that are heavily influenced by the facts and circumstances of individual cases.'" *Gildon*, 158 Wn.2d at 495 (quoting 7 Charles Allen Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 1604, at 39 (3d ed. 2001)).[7] The burden of proof for establishing indispensability is on the party urging dismissal. *Gildon*, 158 Wn.2d at 495.

¶27 The first step here is satisfied—the Tribe is necessary for just adjudication. It is a fundamental principle that "'a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract.'" *Wilbur v. Locke*, 423 F.3d 1101, 1113 (9th Cir. 2005) (quoting *Dawavendewa*, 276 F.3d at 1157).

¶28 Because the Tribe is necessary but it is not possible to join it, we review the trial court's determination, keeping in mind the four CR 19 factors. Here, the first three factors weigh in the Tribe's favor, but the final factor favors Matheson.

¶29 First, a judgment rendered in the Tribe's absence would greatly prejudice the Tribe. If a court were to grant Matheson the relief he requests, the Agreement would essentially disintegrate. The Tribe has a substantial interest in the continued existence of the Agreement; any change to the Agreement would inherently prejudice the Tribe.

¶30 Furthermore, it is not apparent how the remedy could be shaped to lessen the prejudice to the Tribe. Proceeding on the antitrust claims alone, as Matheson seems to suggest, would still jeopardize the Agreement if Matheson were to succeed. If the trial court allows him to serve a second supplemental complaint (this issue is examined below), Matheson may suggest a remedy that will not prejudice the Tribe, but evidence of such a remedy is not before us.

---

[7] Matheson cites to a number of cases that purportedly hold that a tribe is not an indispensable party. However, the required analysis is extremely fact-intensive, and none of the cases he cites are truly analogous.

¶31 Third, it is difficult to imagine how a remedy fashioned without the presence of the Tribe would be adequate to address Matheson's concerns. Each of Matheson's arguments center around the Agreement's dissolution, and any lesser remedy (as would be required in the absence of the Tribe) will not likely be adequate to address his concerns.

¶32 The final factor, however, weighs heavily in Matheson's favor. Matheson may not have an adequate remedy if his case is dismissed, though it is possible that he could pursue action in Tribal court. Despite this, the Ninth Circuit has regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or forum for plaintiffs. *Wilbur*, 423 F.3d at 1115. Therefore, balancing all four factors illustrates that the Tribe was indeed an indispensable party, and the trial court did not err in dismissing the suit.

¶33 Matheson also claims that the trial court erred "by refusing to follow" *Aungst v. Roberts Construction Co.*, 95 Wn.2d 439, 625 P.2d 167 (1981), which held that a tribe was "not an indispensable party and therefore not a necessary party." Appellant's Br. at 1. There are two problems with this argument. First, *Aungst* is distinguishable. The court there held that a tribe was not an indispensable party in a suit against a nontribal corporation for violations of the Consumer Protection Act, chapter 19.86 RCW, and The Securities Act of Washington, chapter 21.20 RCW, because it was possible to craft a remedy that did not prejudice the tribe. *Aungst*, 95 Wn.2d at 444. Furthermore, Matheson is mistaken about the law; a necessary party may be indispensable, but a dispensable party may still be necessary. *See* CR 19.

III. SECOND SUPPLEMENTAL COMPLAINT

¶34 Matheson claims that the trial court also erred by not allowing him to file his second supplemental complaint. The State responds that Matheson's notice of appeal precluded the trial court from ruling on his motion to serve the second complaint.

¶35 The parties stipulated that the trial court would *not* consider Matheson's motion to file the second complaint pending his appeal on the trial court's denial of his motion for reconsideration. Matheson's argument here mischaracterizes the record. Because the trial court did not rule on his motion to file a second complaint, this issue is not ripe for review. *See* RAP 2.2, 9.2.

IV. VALIDITY OF CIGARETTE TAX AGREEMENT STATUTORY REQUIREMENTS

¶36 Matheson argues that the "Dormant Indian Interstate Commerce Clause" and "[o]ther [c]onstitutional [p]rovisions" invalidate RCW 43.06.455(5)(b), (8), and the provisions of the Agreement "[a]llowing State [e]mployees [o]r [a]gents to [r]egulate Plaintiff."[8] Appellant's Br. at 20. He claims that "[t]he dormant commerce clause is a limitation of State authority over Indian reservations and reservation Indians" and that "[t]he dormant Indian commerce clause is a limitation of State authority over Indian reservations and reservation Indians," but again, he offers no support or legal authority to support these arguments. Appellant's Br. at 21, 22.

¶37 Furthermore, the merits of Matheson's argument regarding the legality of the Agreement are not before us. Matheson assigned error to the trial court's "[upholding] the validity" of the Agreement, but the trial court did not do

---

[8] RCW 43.06.455(5) and (8) state:

(5) Cigarette tax contracts shall provide that retailers shall purchase cigarettes only from:

. . . .

(b) Out-of-state wholesalers or manufacturers who, although not licensed to do business in the state of Washington, agree to comply with the terms of the cigarette tax contract, are certified to the state as having so agreed, and who do in fact so comply. However, the state may in its sole discretion exercise its administrative and enforcement powers over such wholesalers or manufacturers to the extent permitted by law.

. . . .

(8) Tax revenue retained by a tribe must be used for essential government services. Use of tax revenue for subsidization of cigarette and food retailers is prohibited.

so. Appellant's Br. at 3. The court dismissed Matheson's complaint without reaching its merits.

¶38 Matheson appears to raise a case of first impression on the legality of tribal-state compacts not expressly approved by the federal government. However, he has failed to adequately argue his constitutional claims, and he failed to preserve the substantive issues for appeal. The legality of such compacts poses an interesting legal question, but investigation into the issue is not well served by the posture of this case. We therefore decline review of Matheson's substantive arguments.

V. MOTION FOR RECONSIDERATION

¶39 Matheson's notice of appeal specifically sought review of the trial court's decision denying his motion for reconsideration. However, he fails to either assign error or put forth any argument regarding the trial court's denial of his motion. Therefore, we need not consider whether the trial court's denial of Matheson's motion for reconsideration was proper. *See* RAP 10.3(a)(3).

VI. FAILURE TO STATE A CLAIM

¶40 Matheson repeatedly asserts the merits of his case regarding possible violations of the Medicine Creek Treaty (10 Stat. 1132 (1854)), the privileges and immunities clause (CONST. art. I, § 12), and federal antitrust law. The merits of his case were not decided by the trial court and are not properly before us. As we stated above, we review a CR 19 dismissal for abuse of discretion, not de novo.

¶41 Finally, Matheson argues that the order dismissing the case was "cursory and incomplete" because it did not address all material issues. Appellant's Br. at 10. He fails to specify what the trial court omitted from its order and cites only one out-of-state case to support his claim.[9] Washington

---

[9] *Firemen's Ret. Sys. v. City of St. Louis*, 911 S.W.2d 679, 681 (Mo. Ct. App. 1995) (reversing an "incomplete" trial court order because it did not address all legal issues raised).

has not adopted a similar rule; this argument is not persuasive.[10]

## ATTORNEY FEES

 ¶42 The Tribe argues that it is entitled to attorney fees under RAP 18.9(a), which authorizes an attorney fees award when responding to a frivolous appeal. An appeal is frivolous when there are no debatable issues on which reasonable minds would differ, when the appeal is so devoid of merit that there was no reasonable possibility of reversal, or when the appellant fails to address the basis of the trial court's decision. *See Mahoney v. Shinpoch*, 107 Wn.2d 679, 691-92, 732 P.2d 510 (1987).

¶43 This appeal was not frivolous; Matheson did raise debatable issues on which reasonable minds would differ. We therefore decline to grant the Tribe's request.

¶44 We affirm.

HOUGHTON, C.J., and VAN DEREN, J., concur.

Review denied at 163 Wn.2d 1020 (2008).

---

[10] We note that we soundly rejected this exact argument in *Bercier v. Kiga*, 127 Wn. App. 809, 825, 103 P.3d 232 (2004).