**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DANIEL T. MILLER; AMBER LANPHERE; PAUL M. MATHESON, *Plaintiffs-Appellants*, <br><br> v. <br><br> CHAD WRIGHT, Puyallup Tribe Tax Department, Enforcement Officer; HERMAN DILLON, SR., Chairman Puyallup Tribe of Indians; PUYALLUP TRIBE OF INDIANS, a federally recognized American Indian tribe, <br> *Defendants-Appellees*. | No. 11-35850 <br><br> D.C. No. 3:11-cv-05395-RBL <br><br><br> ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
August 6, 2012—Seattle, Washington

Filed November 13, 2012
Amended January 14, 2013

Before: John T. Noonan, Susan P. Graber,
and Johnnie B. Rawlinson, Circuit Judges.

Order;
Opinion by Judge Rawlinson

## SUMMARY[*]

Affirming the district court's dismissal of an antitrust action brought by cigarette vendors challenging taxes imposed by virtue of the authority vested in an Indian tribe, the panel held that the district court lacked subject matter jurisdiction in light of the tribe's sovereign immunity.

The panel held that the tribe did not implicitly waive its sovereign immunity by agreeing to dispute resolution procedures nor by ceding its authority to Washington State when entering into a cigarette tax contract. The panel also held that federal antitrust law did not explicitly abrogate tribal immunity, and the Sherman Antitrust Act was not a law of general applicability vis-a-vis the tribe. The panel held that tribal officials were protected by the tribe's sovereign immunity because they acted pursuant to the tribe's authority.

The panel also affirmed the district court's alternative ruling that the action was barred by res judicata in light of prior litigation in state and tribal courts.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Robert Kovacevich, Spokane, Washington, for Appellants Daniel Miller, Amber Lanphere, and Paul M. Matheson.

John Howard Bell (argued) and Andrea George, Tacoma, Washington, for Appellees Herman Dillon Sr., Chairman, Puyallup Tribe of Indians, and the Puyallup Tribe of Indians, a federally recognized Indian tribe.

James H. Jordan, Jr., Miller Nash LLP, Seattle, Washington, for Appellee Chad Wright, Puyallup Tribe Tax Department, Enforcement Officer.

## ORDER

Appellees' Request for Reconsideration and Correction of Footnote 4, filed on November 26, 2012, is construed as a Petition for Panel Rehearing. So construed, the petition is GRANTED. The opinion in this case, filed on November 13, 2012, is AMENDED to delete footnote 4, Slip Opinion, p. 13246.

No further petitions for rehearing or petitions for rehearing en banc will be entertained.

## OPINION

RAWLINSON, Circuit Judge:

This is the latest iteration of cigarette vendors' challenge to taxes imposed by virtue of the authority vested in an Indian tribe. Appellants Daniel T. Miller (Miller), Amber Lanphere (Lanphere), and Paul M. Matheson (Matheson) appeal the district court's dismissal of their antitrust action against appellees Herman Dillon (Dillon), Chad Wright (Wright) and the Puyallup Tribe (the Tribe). The district court dismissed the action for lack of subject matter jurisdiction in light of the tribe's sovereign immunity.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court.

## I. BACKGROUND

### A. Plaintiffs Matheson, Miller, and Lanphere

Matheson is an enrolled Puyallup Indian who owns a retail store that sells cigarettes. Matheson's store is located within the Puyallup Indian Reservation. The Tribe operates retail stores in the same vicinity.

Miller is a non-Indian, non-resident of the reservation who purchased cigarettes from Matheson. As a result of the Tribe's cigarette tax, the price Miller paid for a carton of cigarettes included a $30.00 fee. This $30.00 fee stemmed from the cigarette tax contract (CTC) between the State of

---

[1] In reviewing a district court's grant of a motion to dismiss, we "accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *AE ex rel. Hernandez v. County of Tulare,* 666 F.3d 631, 636 (9th Cir. 2012) (citation omitted).

Washington and the Tribe. The price also included a $5 fee for the benefit of Washington's public health fund. Washington requires collection of the $5 fee to comply with provisions of the Master Settlement Agreement (MSA), a settlement between the tobacco industry and numerous states, including Washington. *See* Wash. Rev. Code § 70.157.010(e). Pursuant to the MSA, tobacco manufacturers make payments to an escrow fund for public health. *See* Wash. Rev. Code §§ 70.157.020, 43.79.480. Tobacco manufacturers who are not party to the MSA must pay funds into escrow. *See* Wash. Rev. Code § 70.157.020(a) and (b). Miller seeks a refund of these fees and a permanent injunction against their future collection.

Lanphere is also a non-Indian, non-resident of the reservation who purchased cigarettes from Matheson's store. Like Miller, the price Lanphere paid included the tribe's cigarette tax and the health fund fee. Lanphere also seeks a refund of fees paid and a permanent injunction.

Prior to this litigation, Miller and other plaintiffs pursued legal relief in other fora. Matheson first filed suit for injunctive relief, declaratory judgment, and damages in Washington state court. He specifically sought a ruling that the cigarette tax contract with the state was invalid. The Washington Court of Appeals affirmed the trial court's dismissal of the action, and the Washington and United States Supreme Courts denied review. *Matheson v. Gregoire*, 139 Wash. App. 624 (2007), *rev. denied*, 163 Wash. 2d 1020, *cert. denied*, 555 U.S. 881 (2008).

Matheson and Lanphere then filed a similar action in Puyallup Tribal Court, seeking to invalidate the cigarette tax contract. This action was dismissed by the tribal court

because of the Tribe's sovereign immunity. The Tribal Court of Appeals affirmed the dismissal.

Before the conclusion of proceedings in the tribal court, Matheson and Lanphere filed suit in the United States District Court for the Western District of Washington. That action was dismissed for failure to complete the tribal proceedings. *See Lanphere v. Wright*, No. C09-5462 BHS, 2009 WL 3617752 (W.D. Wash. Oct. 29, 2009). We affirmed the dismissal. *See Lanphere v. Wright*, 387 F. App'x 766 (9th Cir. 2010).

## B.  The Tribe

Chad Wright "is or was the Tax Enforcement Officer of the Puyallup Tribe" and Chief Executive Officer of the Tribe's store located near Matheson's. Herman Dillon, Sr., is the tribal chairman of the Puyallup Tribe.

The Puyallup Tribe entered into a compact with the State of Washington whereby the Tribe agreed that tribal retailers would purchase only from Washington State Tobacco Wholesalers or state certified wholesalers. Likewise, the Tribe agreed to require retailers to charge a cigarette tax equal to the amount of the tax that would otherwise be imposed by the state. The Tribe's agreement with the state provides that "[r]esponsibility for enforcement of the terms of this agreement shall be shared by the State and the Tribe. . . ." The agreement also provides for mediation.

## C. Miller's, Lanphere's, and Matheson's Allegations Before the District Court

Miller, Lanphere, and Matheson alleged that the Tribe forces them "to pay more for the cigarettes by adding illegal charges and restricting [Matheson's] purchases at wholesale to wholesalers who charge more to [sic] the product than other wholesalers would charge. . . ." Their complaint sought an injunction, a declaratory judgment, damages, and a refund of fees paid as a result of the charges imposed by the Tribe.

## D. The District Court's Dismissal Order

The district court granted the Tribe's motion to dismiss, explaining that Miller, Lanphere, and Matheson "failed [to meet their] burden of showing that sovereign immunity has been waived and that [the district court] has jurisdiction to hear the matter."

Miller, Lanphere, and Matheson timely appealed.

## II. STANDARDS OF REVIEW

We review *de novo* a district court's dismissal for lack of subject matter jurisdiction. *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 974 (9th Cir. 2012). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (citation omitted).

We review *de novo* questions of sovereign immunity. *See Alvarez v. Hill*, 667 F.3d 1061, 1063 (9th Cir. 2012).

## III.  DISCUSSION

## A.  Sovereign Immunity

### 1.  Waiver of Tribal Sovereign Immunity

Miller, Lanphere, and Matheson argue that the Tribe implicitly waived its sovereign immunity by agreeing to dispute resolution procedures and by ceding its authority to Washington State when entering into the cigarette tax contract.

"Tribal sovereign immunity protects Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe.  This immunity applies to the tribe's commercial as well as governmental activities. . . ." *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008) (citations omitted).  "[T]he settled law of our circuit is that tribal corporations acting as an arm of the tribe enjoy the same sovereign immunity granted to a tribe itself. . . ." *Id.*

### a)  The Cigarette Tax Contract

The nature of the cigarette tax contract between the Tribe and the State of Washington does not reflect a waiver of tribal sovereign immunity simply by entering into the contract.

As we recently recognized, "[t]here has been a long-standing dispute about the state's power to tax cigarette sales by tribal retailers on Indian reservations to non-Indians. . . ." *United States v. Wilbur*, 674 F.3d 1160, 1165 (9th Cir. 2012).  As a means of resolving this dispute, Washington law "authoriz[es] the Governor to enter into cigarette tax contracts ('CTC') with various tribes.  A CTC is typically an

agreement by the state to retrocede its cigarette taxes to the tribe for transactions covered by a CTC in exchange for the tribe's agreement to impose a cigarette tax equal to the state's and to use the proceeds to fund essential tribal government services. . . ." *Id.* at 1166 (citation omitted). "The legislation describes conditions a tribe must accept to enter into a CTC. The CTC shall provide that the tribal cigarette tax rate be one hundred percent of the state cigarette and state and local sales and use taxes. . . ." *Id.* (citation and internal quotation marks omitted). "The contract shall provide that Indian retailers can purchase cigarettes only from licensed Washington wholesalers, tribal manufacturers, or out-of-state wholesalers or manufacturers who have agreed to comply with the terms of the CTC. . . ." *Id.* (citation and internal quotation marks omitted).

As described in *Wilbur*, any fees imposed pursuant to the CTC stem from the State of Washington's complex statutory requirements as applied to the Tribe. Nothing about compliance with these legal requirements evidences a clear waiver by the Tribe of its sovereign immunity. *See C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418-19 (2001) (noting that a waiver of tribal sovereign immunity must be clear); *see also Maxwell v. County of San Diego*, 697 F.3d 944, 953 (9th Cir. 2012) ("Waivers of tribal sovereign immunity must be explicit and unequivocal . . . .") (citation omitted).

### b)  The Dispute Resolution Clause

The Supreme Court has held that agreeing to an arbitration clause may establish a clear waiver of sovereign immunity. *See C & L*, 532 U.S. at 418-19.

In *C & L*, the Potawatomi Tribe entered into a form contract with C & L for roofing work.  The form contract was proposed by the Tribe, and all details not set out in the form were added by the Tribe.  *See id.* at 414.  The Tribe expressly agreed to arbitrate any disputes arising under the contract, with Oklahoma law designated as the governing law.  The Tribe also explicitly consented to enforcement of any ensuing arbitration award "in any court having jurisdiction thereof." *Id.*  Oklahoma has promulgated a Uniform Arbitration Act that confers jurisdiction upon the courts of Oklahoma to enforce arbitration agreements and any resulting arbitration awards.  *See id.* at 415.

After the contract was signed, the Tribe decided to procure the services of a different roofing contractor.  *See id.* at 416.  When C & L sought arbitration, the Tribe declined to participate in the arbitration proceedings.  *See id.*  C & L obtained an arbitration award and sued in Oklahoma state court to enforce the award.  *See id.*  The Tribe asserted sovereign immunity.  Following a remand from the United States Supreme Court, the Oklahoma Court of Civil Appeals ruled that the Tribe had not waived sovereign immunity by agreeing to arbitrate.

Reversing the Oklahoma appeals court, the United States Supreme Court explained that the "contract's provision for arbitration and related prescriptions" waived sovereign immunity.  *See id.* at 418.  By designating Oklahoma law as the law governing contract performance, the Tribe also consented to application of Oklahoma's Uniform Arbitration Act.  The Arbitration Act in turn vested jurisdiction in the Oklahoma state courts over any arbitration award.  *See id.* at 419.

We have described the ruling in *C & L* as one in which:

> the Court relied on two provisions of a contract between a tribe and a construction company to find sufficient evidence of a clear waiver of tribal sovereign immunity: (1) a clause stating that all contractual disputes should be resolved according to American Arbitration Association Rules and providing for enforcement of the arbitrator's award in accordance with applicable law in any court having jurisdiction thereof; and (2) a choice-of-law clause consenting to the law of the project location, Oklahoma. The referenced arbitration rules provided that parties to these rules shall be deemed to have consented to enforcement of the award in federal and state court.

*Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affairs*, 255 F.3d 801, 813 n.5 (9th Cir. 2001) (citations, alteration, and internal quotation marks omitted).[2]

In contrast, the contract provisions at issue in *Demontiney* addressed such mundane issues as indemnity, default remedies, interest rates, and subjugation to enumerated federal laws. *See id.* at 812. Indeed, the contract expressly provided that the Tribe retained its sovereign immunity. *See id.* The only contract provision that addressed dispute

---

[2] We have also held that a tribe waived its sovereign immunity when the tribe itself initiates or joins a lawsuit. *See United States v. Oregon*, 657 F.2d 1009, 1013-14 (9th Cir. 1981). That circumstance does not exist in this case.

resolution at all simply provided that the decision of the Business Committee would be final absent a determination from a "court of competent jurisdiction" of fraud, arbitrariness, capriciousness or gross error. *Id.* Unlike those in *C & L*, the contract provisions in *Demontiney* did not signal an intent to waive sovereign immunity. The dispute resolution clause did not "reference or incorporate procedures that provide for non-tribal jurisdiction for enforcement . . ." *Id.* at 813 n.5. Rather, the contract provisions at issue in *Demontiney* designated the tribal court as the court of exclusive jurisdiction and designated tribal law as the governing law. *See id.* at 812.

The facts of this case are more akin to those in *Demontiney* than to the facts in *C & L*. The inclusion of a mediation provision to resolve disputes between the State of Washington and the Tribe does not evidence a clear and explicit waiver of immunity. As a preliminary matter, mediation generally is not binding and does not reflect an intent to submit to adjudication by a non-tribal entity.[3] Moreover, the CTC in this case did not contain any of the provisions, including subjecting itself to the jurisdiction of the state, that formed the basis for the waiver in *C & L*. The

---

[3] "At its essence, mediation is a process of negotiations facilitated by a third person(s) who assists disputants to pursue a mutually agreeable settlement of their conflict. In contrast to adjudicatory forms of dispute resolution -- hearings, arbitration and trials -- mediation is a contractarian process. The salient features of mediation are an informal process, a neutral mediator without authority to command a result, [and] disputants who participate voluntarily and settle of their own accord . . ." Alan Kirtley, *The Mediation Privilege's Transition from Theory to Implementation: Designing a Mediation Privilege Standard to Protect Mediation Participants, the Process and the Public Interest*, 1995 J. Disp. Resol. 1, 5-6 (1995) (footnote references omitted).

Tribe did not waive its sovereign immunity when it executed the CTC.  *See Demontiney*, 255 F.3d at 812.

### 2.  Abrogation of Tribal Sovereign Immunity

Miller, Lanphere, and Matheson contend that tribal immunity is abrogated by federal antitrust laws.  The Tribe counters that federal antitrust law does not apply to Indian tribes.

Abrogation of tribal immunity by Congress "must be unequivocally expressed in explicit legislation.  Abrogation of tribal sovereign immunity may not be implied." *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1056 (9th Cir. 2004), *as amended on denial of reh'g en banc* (citations and internal quotation marks omitted).  In *Krystal*, we held that the Bankruptcy Code abrogated tribal sovereign immunity by its reference to all foreign and domestic governments. *See id.* at 1057-58.  Similarly, the Tenth Circuit has held that the Safe Drinking Water Act "contains a clear and explicit waiver of tribal immunity" because its definition of person includes municipalities, whose definition in turn includes Indian tribes. *Osage Tribal Council ex rel. Osage Tribe of Indians v. U.S. Dep't of Labor*, 187 F.3d 1174, 1181 (10th Cir. 1999).  In the same vein, the Eighth Circuit has held that the Resource Conservation and Recovery Act of 1976 "clearly indicates congressional intent to abrogate the Tribe's sovereign immunity . . ." *Blue Legs v. U.S. Bureau of Indian Affairs*, 867 F.2d 1094, 1097 (8th Cir. 1989).

Unlike these laws, federal antitrust law does not "unequivocally express[] in explicit legislation" that it abrogates tribal sovereign immunity.  *Krystal*, 357 F.3d at 1056 (citations and internal quotation marks omitted).  The

Sherman Act, for example, refers only to states and foreign nations.  *See* 15 U.S.C. § 1.  Similarly, the Clayton Act defines the persons to whom it applies as "corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country."  15 U.S.C. § 12.  Nowhere does either statute employ the sort of expansive language that we and other circuits have held to unequivocally abrogate tribal sovereign immunity.

In determining whether sovereign immunity is abrogated, "we may look to state sovereign immunity precedent to help determine how 'explicit' an abrogation must be . . ." *Krystal*, 357 F.3d at 1056.  "A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. . . . " *Id.* at 1060 (citations and emphasis omitted).

Our decision in *Sanders v. Brown*, 504 F.3d 903 (9th Cir. 2007), is instructive.  *Sanders* involved a challenge to the MSA.  *See id.* at 906.  The plaintiffs alleged that the MSA violated the Sherman Act, 15 U.S.C. § 1 *et seq.  See id.*  We held that states are immune from antitrust liability for entering into and implementing the MSA.  *See id.* at 915 ("The [state action] immunity doctrine protects most state laws and actions from antitrust liability. . . ."); *see also Parker v. Brown*, 317 U.S. 341, 351 (1943) (explaining that "[t]he Sherman Act makes no mention of the state as such, and gives no hint that it was intended to restrain state action or official action directed by a state").  The district court thus correctly relied on *Parker* to hold that federal antitrust law does not abrogate the Tribe's sovereign immunity.

We are not persuaded that *Jefferson County Pharmaceutical Ass'n v. Abbott Labs.*, 460 U.S. 150 (1983), is the more applicable precedent. *Jefferson County* involved a challenge by retail pharmacists and pharmacies to alleged price-fixing by drug manufacturers and hospitals of the state university. *See id.* at 152-53. The respondents argued that the state purchases were exempt from federal antitrust law. *See id.* at 153. The Supreme Court characterized the "narrow" issue as whether "state purchases for the purpose of competing against private enterprise-with the advantage of discriminatory prices-in the retail market" are exempt from the price-fixing statute. *Id.* at 154 (footnote reference omitted). In her dissent, Justice O'Connor noted that *Parker* involved sovereign immunity rather than an exemption from statutory provisions. *See id.* at 177 n.5 (O'Connor, J., dissenting).

We agree with Justice O'Connor's description of *Parker* and conclude that this case is more akin to *Parker* than to *Jefferson County*. As in *Parker*, this case involves a challenge to the sovereign immunity of the Tribe rather than a challenge to the Tribe's claimed statutory exemption. Accordingly, we agree with the district court that *Parker* is the more relevant legal authority.

Miller, Lanphere, and Matheson also argue that federal antitrust law abrogates tribal immunity because the Sherman Act is a statute of general applicability, and none of the exceptions articulated in *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113 (9th Cir. 1985), applies. *Donovan* counsels that federal statutes of general applicability apply to Indian tribes unless one of three exceptions applies:

> (1) the law touches exclusive rights of
> self-governance in purely intramural matters;
> (2) the application of the law to the tribe
> would abrogate rights guaranteed by Indian
> treaties; or (3) there is proof by legislative
> history or some other means that Congress
> intended the law not to apply to Indians on
> their reservations. In any of these three
> situations, Congress must *expressly* apply a
> statute to Indians before we will hold that it
> reaches them.

*Id.* at 1116 (citation, alteration, and internal quotation marks omitted).

As we have explained, federal antitrust laws are not intended to apply to Indian tribes. This conclusion forecloses the argument that federal antitrust law is of general applicability vis-a-vis the Tribe. Indeed, as the district court properly ruled, *Donovan*'s third exception is consistent with the precedent underlying our conclusion that Congress did not include Indian tribes within the entities subject to antitrust law.

Because Miller, Lanphere, and Matheson failed to successfully challenge the Tribe's sovereign immunity, we affirm the district court's holding that it lacked subject matter jurisdiction to adjudicate the claims asserted against the Tribe.

### 3. Immunity of Tribal Officials

Miller, Lanphere, and Matheson argue that the tribal officials are not covered by tribal sovereign immunity

because they assess unconstitutional taxes. The Tribe counters that the officials act in their official capacity when they collect the Tribe's taxes, which the officials have the authority to impose.

A suit against the Tribe and its officials "in their official capacities is a suit against the tribe [and] is barred by tribal sovereign immunity unless that immunity has been abrogated or waived." *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002). "Tribal sovereign immunity extends to tribal officials when acting in their official capacity and within the scope of their authority. . . ." *Cook*, 548 F.3d at 727 (citation and internal quotation marks omitted). "[A] plaintiff cannot circumvent tribal immunity by the simple expedient of naming an officer of the Tribe as a defendant, rather than the sovereign entity. . . ." *Id.* (citation and internal quotation marks omitted).

As the district court found, the tribal officials are protected by the Tribe's sovereign immunity because they were acting pursuant to the Tribe's authority. "The power to tax transactions occurring on trust lands and significantly involving a tribe or its members is a fundamental attribute of sovereignty which the tribes retain unless divested of it by federal law or necessary implication of their dependent status." *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 152 (1980) (citation omitted).

The Tribe's sovereign immunity thus extends to its officials who were acting in their official capacities and within the scope of their authority when they taxed transactions occurring on the reservation. *See Cook*, 548 F.3d at 727; *see also Confederated Tribes*, 447 U.S. at 152.

Moreover, to the extent the complaint seeks monetary relief, such claims are barred under *Ex Parte Young*. *See Salt River Project Agr. Imp. and Power Dist. v. Lee*, 672 F.3d 1176, 1181 (9th Cir. 2012). We therefore reject Miller's, Lanphere's, and Matheson's attempt to circumvent tribal immunity by naming tribal officials as defendants. *See Cook*, 548 F.3d at 727.

In the alternative, the district court also correctly concluded that res judicata bars this action. "Res judicata, also known as claim preclusion, applies only where there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties. . . ." *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 917 (9th Cir. 2012) (citation and internal quotation marks omitted).

Res judicata bars this action. Like the suits in state court and tribal court, the claims in this case involve allegedly unlawful cigarette taxes arising from the sales at Matheson's store on the Puyallup reservation. There is thus an identity of claims. *See Turtle Island*, 673 F.3d at 917-18. Likewise, the state and tribal courts reached final judgments and Miller is in privity with Lanphere and Matheson given the substantial commonality of their interests. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003).

## IV.    CONCLUSION

As we have described, this action fails for four reasons. First, the Tribe has not waived its tribal sovereign immunity. Neither the cigarette tax contract nor the dispute resolution clause in the contract constitutes a waiver by the Tribe.

Second, contrary to Miller's, Lanphere's, and Matheson's argument, federal antitrust law does not abrogate tribal sovereign immunity. Third, the Tribe's sovereign immunity extends to the tribal officials who were acting in their official capacities and pursuant to the Tribe's authority. Fourth, the district court correctly held that res judicata bars this action in light of the prior litigation in state and tribal courts.

**AFFIRMED.**