BERZON, Circuit Judge:
 

 Appellant Krystal Energy Company (“Krystal”) appeals the district court’s dismissal of its adversary action under the Bankruptcy Code, 11 U.S.C. §§ 505 and 542, against the Navajo Nation, an Indian tribe. The district court based its dismissal on the Navajo Nation’s sovereign immunity to suit in the absence of explicit abrogation of that immunity by Congress. Whether Congress has abrogated the sovereign immunity of Indian tribes by statute is a question of statutory interpretation and is reviewed de novo.
 
 Demontiney v. United States, 255
 
 F.3d 801, 805 (9th Cir.2001). Because we conclude that Congress did abrogate the sovereign immunity of Indian tribes under 11 U.S.C. §§ 106(a) and 101(27), we reverse.
 

 Immunity from suit has been recognized by the courts of this country as integral to the sovereignty and self-governance of Indian tribes.
 
 Kiowa Tribe of Okla. v. Mfg. Techs., Inc.,
 
 523 U.S. 751, 756-58, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998)
 
 (“Kiowa Tribe”). See also Okla. Tax Comm. v. Citizen Band Potawatomi Indian Tribe of Okla.,
 
 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991)
 
 (“Potawatomi
 
 ”) (recognizing the sovereign immunity of Indian tribes absent a clear waiver by the tribe or congressional abrogation);
 
 Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng’g,
 
 476 U.S. 877, 890, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986) (“The common law sovereign immunity possessed by the Tribe is a necessary corollary to Indian sovereignty and self-governance.”);
 
 Santa Clara Pueblo v. Martinez,
 
 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (“Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.”). Tribal sovereign immunity is not absolute, however. Congress may abrogate it and thereby authorize suit against Indian tribes.
 
 Santa Clara Pueblo,
 
 436 U.S. at 58, 98 S.Ct. 1670 (citing
 
 United States v. Testan,
 
 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Such an abrogation must be “unequivocally expressed,”
 
 id.,
 
 in “explicit legislation,”
 
 Kiowa Tribe,
 
 523 U.S. at 759, 118 S.Ct. 1700. Abrogation of tribal sovereign immunity may not be implied.
 
 Santa Clara Pueblo,
 
 436 U.S. at 58, 98 S.Ct. 1670 (citing
 
 Testan,
 
 424 U.S. at 399, 96 S.Ct. 948).
 

 Identical language is used by courts in determining whether Congress has abrogated the sovereign immunity of states.
 
 Seminole Tribe of Fla. v. Fla.,
 
 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (“In order to determine whether Congress has abrogated the States’ sovereign immunity, we ask[,] ... first, whether Congress has ‘unequivocally expresse[d] its intent to abrogate the immunity’” (citations omitted));
 
 Kimel v. Fla. Bd. of Regents,
 
 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (same);
 
 see also Osage Tribal Council v. United States Dep’t of Labor,
 
 187 F.3d 1174, 1181 (10th Cir.1999) (“Conceding potential differences between tribal and state sovereign immunity, we note that courts have often used similar language in defining the requirements for waiver of [Eleventh Amendment state sovereign immunity].”);
 
 Fla. Paraplegic, Ass’n v. Miccosukee Tribe of Indians,
 
 166 F.3d 1126, 1131 (11th Cir.1999) (equating the standards applied in determining whether Congress abrogated “federal and state governments’ protection from suit” and tribal sovereign immunity). While there are additional constraints on Congress’s power to abrogate state sovereign immunity, we may look to state sovereign immunity precedent to help determine how “explicit” an abrogation must be, and do so in deciding the issue before us.
 

 
 *1057
 
 That issue is whether Congress abrogated the sovereign immunity of Indian tribes when it enacted § 106 of the Bankruptcy Code. To answer this question, we look to the text of the code:
 
 [1]
 

 (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
 

 (1) Sections ... 505, ... 542....
 

 11 U.S.C. § 106(a) (1995).
 

 “Governmental unit,” in turn, is defined as:
 

 United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States ..., a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic governments ....
 

 11 U.S.C. § 101(27) (1995). Neither the Supreme Court nor any circuit has determined whether these statutes, which do not include the term “Indian tribes” or any similar language, suffice to abrogate Indian tribes’ immunity from suit.
 

 It is clear from the face of §§ 106(a) and 101(27) that Congress did intend to abrogate the sovereign immunity of
 
 all
 
 “foreign and domestic governments.” Section 106(a) explicitly abrogates the sovereign immunity of all “governmental units.” The definition of “governmental unit” first lists a sub-set of all governmental bodies, but then adds a catch-all phrase, “or other foreign or domestic governments.” 11 U.S.C. § 101(27). Thus,
 
 all
 
 foreign and domestic governments, including but not limited to those particularly enumerated in the first part of the definition, are considered “governmental units” for the purpose of the Bankruptcy Code, and, under § 106(a), are subject to suit.
 

 Indian tribes are certainly governments, whether considered foreign or domestic (and, logically, there is no other form of government outside the foreign/domestic dichotomy, unless one entertains the possibility of extra-terrestrial states).
 

 The Supreme Court has recognized that Indian tribes are “ ‘domestic dependent nations’ that exercise inherent sovereign authority over their members and territories.”
 
 Potawatomi,
 
 498 U.S. at 509, 111 S.Ct. 905 (citing
 
 Cherokee Nation v. Georgia,
 
 5 Pet. 1, 17, 8 L.Ed. 25 (1831));
 
 see also, Blatchford v. Native Village of Noatak,
 
 501 U.S. 775, 782, 111 S.Ct. 2578, 115 L.Ed.2d 686 (comparing Indian tribes to states and foreign sovereigns, and concluding that both states and Indian tribes are “domestic” sovereigns). So the category “Indian tribes” is simply a specific member of the group of domestic governments, the immunity of which Congress intended to abrogate.
 

 Had Congress simply stated, “sovereign immunity is abrogated as to all parties who otherwise could claim sovereign immunity,” there can be no doubt that Indian tribes, as parties who could otherwise claim sovereign immunity, would no longer be able to do so. Similarly here, Congress
 
 *1058
 
 explicitly abrogated the immunity of
 
 any
 
 “foreign or domestic government.” Indian tribes are domestic governments. Therefore, Congress expressly abrogated the immunity of Indian tribes.
 
 See In re Russell,
 
 293 B.R. 34, 44 (D.Ariz.2003) (concluding that § 106(a) abrogates tribal sovereign immunity “unequivocally[ ] and without implication”);
 
 see also In re Davis Chevrolet, Inc.,
 
 282 B.R. 674, 683 n. 5 (Bankr.D.Ariz. 2002) (“It seems to this court that ‘other domestic government’ is broad enough to encompass Indian tribes.”);
 
 In re Mayes,
 
 294 B.R. 145, 157-60 (10th Cir.2003) (McFeeley, J., dissenting) (arguing that § 106(a) does abrogate tribal sovereign immunity);
 
 In re Vianese,
 
 195 B.R. 572, 575 (Bankr.N.D.N.Y.1995) (holding that Tribe had individually waived its sovereign immunity, and stating in dicta that § 106(a) did abrogate the sovereign immunity of Indian tribes under the Bankruptcy Code).
 

 Similar syllogistic reasoning was followed in
 
 Kimel,
 
 a case concerning the abrogation of state sovereign immunity.
 
 Kimel,
 
 528 U.S. at 73-74, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). In that case, the Supreme Court held that Congress had clearly expressed its intent to abrogate the sovereign immunity of the states when passing certain amendments to the Age Discrimination Enforcement Act (ADEA).
 
 Id.
 
 At the same time,
 
 Kimel
 
 recognized that this expression of intent, while explicit, did not appear in terms on the face of the ADEA:
 

 The ADEA states that its provisions “shall be enforced in accordance with the powers, remedies, and procedures provided in section[ ] ... 216 ... of this title....” 29 U.S.C. § 626(b). Section 216(b), in turn, clearly provides for suits by individuals against States. That provision authorizes employees to maintain actions for backpay “against any employer (including a public agency) in any Federal or State court of competent jurisdiction .... ” Any doubt concerning the identity of the “public agency” defendant named in § 216(b) is dispelled by looking to § 203(x), which defines the term to include “the government of a State or political subdivision thereof,” and “any agency of ... a State, or a political subdivision of a State.” Read as a whole the plain language of these provisions clearly demonstrates Congress’ intent to subject the States to suit for money damages at the hands of individual employees.
 

 Id.
 
 Congress, therefore, need not make its intent to abrogate “unmistakably clear” in a single section of a statute.
 
 Id.
 
 at 76, 120 S.Ct. 631.
 
 See also Osage Tribal Council v. United States Dep’t of Labor,
 
 187 F.3d 1174, 1181-82 (10th Cir.1999) (holding that the Safe Drinking Water Act “contains a clear and explicit waiver of tribal immunity” despite the fact that the court had to piece together various subsections of the statute to arrive at that conclusion).
 

 The difference between
 
 Kimel
 
 and
 
 Osage,
 
 on the one hand, and the case presently before us, on the other, is evident but, in the end, unimportant: Unlike the definition of “public agency” in the ADEA, which
 
 does
 
 list “States,”
 
 [2]
 
 no definition in the Bankruptcy Code actually lists “Indian tribes” as either a foreign or domestic government. However, in enacting the Bankruptcy code, Congress was legislating against the back-drop of prior Supreme Court decisions, which
 
 do
 
 define Indian tribes as domestic nations, i.e., governments, as well as against the ordinary, all-
 
 *1059
 
 encompassing meaning of the term “other foreign or domestic governments.”
 

 In the realm of Eleventh Amendment abrogation, Congress clearly does not have to list all of the specific states, beginning with Alabama and ending with Wyoming, for a court to conclude in one specific instance that Wisconsin’s sovereign immunity has been abrogated by a statute that abrogates the sovereign immunity of all states. Similarly, Congress has abrogated the sovereign immunity of all foreign and domestic governments in § 106(a) of the Bankruptcy Code. The Navajo Nation is a specific example of a domestic government. Therefore, the Navajo Nation’s sovereign immunity, like that of all individual domestic governments, has been abrogated.
 

 We can find no other statute in which Congress effected a generic abrogation of sovereign immunity and because of which a court was faced with the question of whether such generic abrogation in turn effected specific abrogation of the immunity of a member of the general class. In
 
 Bassett v. Mashantucket Pequot Tribe,
 
 204 F.3d 343 (2d Cir.2000), and
 
 Fla. Paraplegic, Ass’n v. Miccosukee Tribe of Indians of Fla.,
 
 166 F.3d 1126 (11th Cir.1999), our sister circuits held that Congress had not expressly abrogated Tribal sovereign immunity in either the Copyright Act or the ADA. However, the sections of those statutes purporting to abrogate
 
 states’
 
 sovereign immunity do not also purport to abrogate the sovereign immunity of “other foreign or domestic governments,” or some similarly generic term.
 
 See
 
 17 U.S.C. § 511 (1999) (“Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court by any person, including any governmental or nongovernmental entity, for a violation of any of the exclusive rights of a copyright owner provided by section 106 through 122, for importing copies of phonorecords in violation of section 602, or for any other violation under this title.”); 42 U.S.C. § 12188 (1995) (providing a general cause of action for “any person who is being subjected to discrimination on the basis of disability in violation of this subchapter”);
 
 see also,
 
 42 U.S.C. § 12202 (1995) (“A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter.” (footnote omitted)).
 
 [3]
 
 We cannot, thus, rely on these cases for guidance under the Bankruptcy Code.
 

 It is clear from the text of § 106(a) that Congress intended to abrogate the sovereign immunity of both the states and another group of those who may assert sovereign immunity, other foreign and domestic governments. The statute explicitly uses the terms “sovereign immunity” and “abrogate.” This manifest intent distinguishes the present case from those Eleventh Amendment cases in which courts had to determine whether the provision of a general, federal cause of action abrogated states’ sovereign immunity.
 

 In
 
 Atascadero State Hospital v. Scanlon,
 
 473 U.S. 234, 245-46, 105 S.Ct. 3142,
 
 *1060
 
 87 L.Ed.2d 171 (1985), for example, the court held that Congress had not unequivocally expressed its intent to abrogate the sovereign immunity of the states in the Rehabilitation Act. That statute simply authorized suit in federal court against any recipient of federal funds — a category that certainly included individuals other than states or parties capable of claiming sovereign immunity.
 
 Id.
 
 (“The Statute thus provides remedies for violations of [the Rehabilitation Act] by
 
 ‘any’
 
 recipient of Federal assistance.” There is no claim here that the State of California is not a recipient of federal aid.
 
 “A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment.”
 
 (second emphasis added)).
 
 See also Davidson v. Bd. of Governors of State Colls. & Univs. for W. Ill. Univ.,
 
 920 F.2d 441, 443 (7th Cir.1990) (holding that Congress need not have “said in so many words that it was abrogating the states’ sovereign immunity in age discrimination cases” to effectively abrogate states’ immunity, but distinguishing those cases where Congress had simply provided a general cause of action as “insufficiently unequivocal a designation of the state to override its sovereign immunity”).
 

 Section 106(a). does not simply “authorize suit in federal court” under the Bankruptcy Code — it specifically abrogates the sovereign immunity of governmental units, a defined class that is largely made up of parties that could claim sovereign immunity. So to recognize is not, as the Navajo Nation suggests, to
 
 imply
 
 an abrogation that is not explicit in the statute. Instead, reading § 106(a)’s express abrogation as reaching Indian tribes simply interprets the statute’s reach in accord with both the common meaning of its language and the use of similar language by the Supreme Court. No implication beyond the words of the statute is necessary to conclude that Congress “unequivocally expressed” its intent to abrogate Indian tribes’ immunity.
 

 Finally, we also note that, were Indian tribes not “governmental units” for the purpose of § 106(a), a tribe that voluntarily proceeded in federal court under the Code would not be a “governmental unit” under the other sections of the Bankruptcy Code, either. The sections applicable to “governmental units” are myriad, and include § 523 — Exceptions to discharge— which states: “A discharge under[certain sections] of this title does not discharge an individual debtor from any debt ... to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than [certain] tax penalties].” 11 U.S.C. § 523. Thus, although Indian tribes’ sovereign immunity is abrogated by § 106(a), Congress has also provided certain special treatment to Indian tribes as governmental units within the Bankruptcy Code.
 

 We are well aware of the Supreme Court’s admonitions to “tread lightly” in the area of abrogation of tribal sovereign immunity.
 
 See, e.g., Santa Clara Pueblo,
 
 436 U.S. at 72, 98 S.Ct. 1670 (“Congress’ authority over Indian matters is extraordinarily broad, and the role of courts in adjusting relations between and among tribes and their members correspondingly strained.”);
 
 see also id.
 
 at 60, 98 S.Ct. 1670 (“Although Congress clearly has power to authorize civil actions against tribal officers, ... a proper respect both for tribal sovereignty itself and for the plenary authority of Congress in this area cautions that we tread lightly in the absence of clear indications of legislative intent.”);
 
 Kiowa Tribe,
 
 523 U.S. at 759, 118 S.Ct. 1700 (“The capacity of the Legislative Branch to address the issue [of tribal sovereign immunity] by comprehensive legislation counsels some caution by us in this
 
 *1061
 
 area.”). But the Supreme Court’s decisions do not require Congress to utter the magic words “Indian tribes” when abrogating tribal sovereign immunity. Congress speaks “unequivocally” when it abrogates the sovereign immunity of “foreign and domestic governments.” Because Indian tribes are domestic governments, Congress has abrogated their sovereign immunity in 11 U.S.C. § 106(a).
 

 REVERSED and REMANDED.
 

 [1]
 

 .
 
 In re Mitchell,
 
 209 F.3d 1111 (9th Cir.2000), invalidated § 106 insofar as it attempts to abrogate the sovereign immunity of States.
 
 Id.
 
 at 1118-20 (holding that, (1) if enacted pursuant to the Bankruptcy Clause of Article I, § 106 is unconstitutional pursuant to
 
 Seminole Tribe;
 
 and, (2) if passed to enforce “a protection afforded by the Fourteenth Amendment,” then ”[u]ntil Congress makes findings of a pattern of state violations and passes legislation that is proportional to its remedial aims, § 106(a) must be viewed as an unconstitutional assertion of Congress's power” under the "congruent and proportional" test of
 
 City of Boerne v. Flores,
 
 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)). No question has been raised in this case concerning the constitutionality of § 106 as it applies to Indian tribes.
 

 [2]
 

 . Similarly, as discussed in
 
 Osage,
 
 the definition of "municipality” in the SDWA lists "Indian tribe.”
 
 Osage,
 
 187 F.3d at 1182.
 

 [3]
 

 . The Supreme Court has accepted a petition for certiorari in a case concerning the constitutionality of Congress's attempt to abrogate the rights of states in Title II of the ADA.
 
 Lane v. Tennessee,
 
 315 F.3d 680 (6th Cir.2003),
 
 cert. granted Tennessee v. Lane,
 
 _ U.S. _, 123 S.Ct. 2622, 156 L.Ed.2d 626 (2003). The issue in
 
 Lane,
 
 however, is whether or not Congress abrogated state sovereign immunity under Section 5 of the Fourteenth Amendment, not whether the abrogation was explicit enough.