ZOUHARY, District Judge, dissenting.
What we are looking for in the Bankruptcy Code is an "unequivocal expression of ... legislative intent" to abrogate tribal sovereign immunity. Santa Clara Pueblo v. Martinez , 436 U.S. 49, 59, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Such an expression need not be stated in "any particular way" nor use any "magic words." FAA v. Cooper , 566 U.S. 284, 291, 132 S.Ct. 1441, 182 L.Ed.2d 497 (2012). The "proper focus" of this inquiry is on "the language of the statute." Dellmuth v. Muth , 491 U.S. 223, 231, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989). When we look for this unequivocal expression, we employ our "traditional tools of statutory construction." Richlin Sec. Serv. Co. v. Chertoff , 553 U.S. 571, 589, 128 S.Ct. 2007, 170 L.Ed.2d 960 (2008).
I
We begin with the text. Section 106(a) of the Code states that "sovereign immunity is abrogated as to a governmental unit." 11 U.S.C. § 106(a). Right off the bat, we have an explicit, unmistakable statement from Congress that it intends to abrogate sovereign immunity. The sole remaining question is whose sovereign immunity.
For the answer to that question, we turn to Section 101(27), which provides:
The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government .
11 U.S.C. § 101(27) (emphasis added). In this definition, Congress chose to speak broadly. It chose to abrogate the sovereign immunity of all those governmental entities listed explicitly in Section 101(27), and, on top of those, any "other foreign or domestic government." In other words, Congress abrogated the sovereign immunity of any government, of any type, anywhere in the world. See *468 Krystal Energy Co. v. Navajo Nation , 357 F.3d 1055, 1057 (9th Cir. 2004), as amended on denial of reh'g (Apr. 6, 2004) ("[L]ogically, there is no other form of government outside the foreign/domestic dichotomy ....").
Because the statute contains clear language that "sovereign immunity is abrogated" and that language applies to domestic governments, the sole remaining question is one the majority ignores: Is an Indian tribe a domestic government? A tribe is certainly domestic, residing and exercising its sovereign authority within the territorial borders of the United States. And a tribe is a form of government, exercising political authority on behalf of and over its members.
Supreme Court precedent supports this natural reading. The Court refers to Indian tribes as " 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla. , 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (quoting Cherokee Nation v. Georgia, 5 Pet. 1, 17, 8 L.Ed. 25 (1831) ); see also Blatchford v. Native Village of Noatak, 501 U.S. 775, 782, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991) (comparing Indian tribes to states and foreign sovereigns and concluding that both states and Indian tribes are "domestic" sovereigns). The Court says that tribal sovereign immunity itself derives from "Indian sovereignty and self-governance." Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g , 476 U.S. 877, 890, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986). Indeed, the Court explains the basis of tribal sovereign immunity by comparing Indian tribes to "other governments." Turner v. United States , 248 U.S. 354, 357, 39 S.Ct. 109, 63 L.Ed. 291 (1919) ("Like other governments, municipal as well as state, the Creek Nation was free from liability ...."). This comparison to "other governments" makes sense only if tribes are themselves governments.
Congress, too, says Indian tribes are domestic governments, as numerous provisions of the United States Code demonstrate. See, e.g. , 6 U.S.C. § 572(a) (directing cooperation with "State, local, and tribal governments"); 15 U.S.C. § 7451(a)(2) (authorizing various cybersecurity activities that include "State, local, and tribal governments"); 19 U.S.C. § 4332(d)(4)(A)(i) (requiring sharing of best practices concerning a safety plan with "State, local, and tribal governments"); 23 U.S.C. § 202(a)(1)(B)-(C) (providing for funding of certain programs and projects "administered by" or "associated with a tribal government"); 51 U.S.C. § 60302(2) (authorizing research and development "to enhance Federal, State, local, and tribal governments' use of" certain technologies); see also 25 U.S.C. § 4116(b)(2)(B)(ii)(I) (referring to a "government-to-government relationship between the Indian tribes and the United States").
The clear textual evidence of congressional intent to abrogate tribal sovereign immunity in Sections 106(a) and 101(27) is stated as a simple syllogism: Sovereign immunity is abrogated as to all governments. Indian tribes are governments. Hence sovereign immunity is abrogated as to Indian tribes. See In re Russell , 293 B.R. 34, 40 (Bankr. D. Ariz. 2003) (explaining that logical deduction from express statutory language satisfies a standard of unequivocality). Taken together, the text of Sections 106(a) and 101(27) form a clear expression of legislative intent to abrogate the sovereign immunity of Indian tribes.
II
But if this expression is so clear, the majority asks, then how could two circuit *469 courts come to seemingly opposite conclusions about it? Compare Meyers v. Oneida Tribe of Indians of Wis. , 836 F.3d 818, 826 (7th Cir. 2016), with Krystal Energy , 357 F.3d at 1061. This alleged circuit split is less of a conflict than the majority opinion suggests. The only appellate court to rule previously on this question-whether the Bankruptcy Code abrogates tribal sovereign immunity-is the Ninth Circuit in Krystal Energy . That court held the Code abrogates immunity. Krystal Energy , 357 F.3d at 1061.
The Seventh Circuit in Meyers was looking at different language in a different statute. In Meyers , the statute at issue was the Fair and Accurate Credit Transaction Act (FACTA). Meyers wanted to sue the Oneida Tribe because he made credit card purchases at tribe-run businesses, and those businesses produced receipts revealing his credit card number, in violation of FACTA. At issue was whether FACTA abrogated tribal sovereign immunity. The statute provides, "[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1) (emphasis added). It states that any "person" who violates the statute shall be subject to civil liability. 15 U.S.C. §§ 1681n, 1681o. FACTA defines a "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b) (emphasis added).
The Seventh Circuit held that this statutory language did not abrogate tribal sovereign immunity. It reasoned that the term "government," as it appears in FACTA, left ambiguity about whether that word alone was intended to abrogate tribal sovereign immunity. Meyers , 836 F.3d at 820. But nowhere in Meyers did the Seventh Circuit say that Indian tribes are not governments. Further, the Seventh Circuit explicitly steered clear of ruling on how the term "government," as it appears in the Bankruptcy Code, might apply to Indian tribes. Id. at 826 ("We need not weigh in on ... how to interpret the breadth [of] the term 'other domestic governments' under the Bankruptcy Code ....").
The Seventh Circuit finding of ambiguity in FACTA does not affect our analysis of the Bankruptcy Code. Consider how different the FACTA text is from that of the Bankruptcy Code. The Bankruptcy Code states, in no mistakable terms, "sovereign immunity is abrogated as to a governmental unit." 11 U.S.C. § 106(a). FACTA, on the other hand, merely declares a rule that applies to "person[s]" and says that "person[s]" shall be liable for rule violations. See 15 U.S.C. §§ 1681c(g)(1), 1681n, 1681o. Where FACTA makes no mention of sovereign immunity, the Code targets it directly.
Next, consider the differences in the definition sections. The Bankruptcy Code defines "governmental units" using several specific terms and a broad, catch-all term at the end. 11 U.S.C. § 101(27). And all these terms have one common thread: they are entities that would otherwise be entitled to sovereign immunity. Contrast that with the FACTA definition of "person," which mostly lists entities that would not otherwise be entitled to sovereign immunity. See 15 U.S.C. § 1681a(b). These definitions are not "functionally equivalent." Majority Op. at 457-59. One gives far more evidence of intent to abrogate the sovereign immunity of any government of any type.
No wonder the Seventh Circuit could not say "with 'perfect confidence' " that Congress intended FACTA to abrogate *470 tribal sovereign immunity. Meyers , 836 F.3d at 827 (quoting Dellmuth , 491 U.S. at 231, 109 S.Ct. 2397 ). In contrast, the Bankruptcy Code has no such lack of textual evidence. This is why the only other circuit court to address this question concluded, "Because Indian tribes are domestic governments, Congress has abrogated their sovereign immunity." Krystal Energy , 357 F.3d at 1061.
Although Meyers and Krystal Energy can be reconciled based on these differences in statutory language, there is one point of reasoning upon which they-and I with the majority-fundamentally disagree. Meyers and the majority seem to think it important that the Bankruptcy Code does not mention the words "Indian tribe" and that "there is not one example in all of history where the Supreme Court has found that Congress intended to abrogate tribal sovereign immunity without expressly mentioning Indian tribes somewhere in the statute." Meyers , 836 F.3d at 824 (quoting In re Greektown Holdings , LLC , 532 B.R. 680, 693 (E.D. Mich. 2015) ); see also Majority Op. at 459-60. Such an observation highlights the lack of on-point precedent to guide our decision, but it is otherwise irrelevant to the task of statutory interpretation before us.
In the majority's focus on these "magic words," Cooper , 566 U.S. at 291, 132 S.Ct. 1441, it ignores the differences in statutory language between the statutes analyzed in other cases and the one before us today. The Circuit and Supreme Court opinions referenced by the majority analyzed statutes that featured neither the Bankruptcy Code's clear language that "sovereign immunity is abrogated" nor its all-encompassing, sovereign-focused definition of "governmental unit." Our task is to determine whether "the language of the statute" contains an unequivocal expression of intent to abrogate sovereign immunity. Atascadero State Hosp. v. Scanlon , 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Our task is not to hold Congress to a standard of speaking as precisely as it possibly can or to demand that it use the same words today as it has in the past.
Justice Scalia, providing the fifth vote in Dellmuth , emphasized this point, saying that "congressional elimination of sovereign immunity in statutory text" need not make "explicit reference" to any particular terms. Dellmuth , 491 U.S. at 233, 109 S.Ct. 2397 (Scalia, J., concurring). So long as the language of the statute, in whatever form, clearly subjects the sovereign to suit, that will suffice to abrogate immunity. Id. ; see also United States v. Beasley , 12 F.3d 280, 284 (1st Cir. 1993) (Breyer, C.J.) ("Congress can embody a similar ... intent in different ways in different statutes.").
As Krystal Energy held and as explained above, the Code's text forms a clear expression of legislative intent to abrogate the sovereign immunity of Indian tribes.
III
Where the text gives clear evidence of congressional intent to abrogate, courts may look to the larger statutory scheme to "dispel[ ]" any "conceivable doubt" of that intent. Seminole Tribe of Fla. v. Florida , 517 U.S. 44, 56-57, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ; see also Davis v. Michigan Dep't of Treasury , 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). We next look to the Bankruptcy Code's purpose.
"[T]he object of bankruptcy laws is the equitable distribution of the debtor's assets *471 amongst his creditors ...." Kuehner v. Irving Tr. Co. , 299 U.S. 445, 451, 57 S.Ct. 298, 81 L.Ed. 340 (1937). "Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally." S. Rep. No. 95-989, at 49 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5835; H.R. Rep. No. 95-595, at 340 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6297; see also Begier v. I.R.S. , 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code.").
The Code's purpose of establishing and enforcing a fair and equitable distribution procedure is consistent with the broad abrogation of Sections 106(a) and 101(27). With a broad abrogation of immunity, all governments must play by the rules. This context in no way contradicts the text's plain meaning-sovereign immunity is abrogated as to any government, including Indian tribes. Congress expressed its intention unequivocally.
For these reasons, I respectfully dissent.