NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>AFFORDABLE PATIOS & SUNROOMS,<br>dba Reno Patio and Fireplaces,<br>Debtor. | BAP No. NV-21-1085-TFL<br><br>Bk. No. 3:20-bk-50017 BTB |
| CHRISTOPHER BURKE, Chapter 7<br>Trustee,<br><br>Appellant,<br>v.<br>RENO-SPARKS INDIAN COLONY,<br>Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Bruce T. Beesley, Bankruptcy Judge, Presiding

Before: TAYLOR, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] trustee Christopher Burke (the "Trustee") appeals the

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

bankruptcy court's order overruling his objection to the unsecured priority tax claim of appellee Reno-Sparks Indian Colony ("RSIC") and allowing the claim in full. We AFFIRM in part but we REVERSE the determination that the tax penalties were entitled to priority status under § 507(a)(8).

## FACTS[2]

### A.    The Prepetition Businesses

Prepetition, Richard Taylor controlled and operated Affordable Patios & Sunrooms (the "Debtor"), a licensed contractor located at 910 Glendale Avenue, Sparks, Nevada and doing business as Reno Patio and Fireplaces. The Debtor rented the Glendale Avenue property from Reno Patio & Fireplaces, LLC. which Mr. Taylor also controlled and operated. Reno Patio & Fireplaces, LLC was a retail auto sales company located at 690 Sunshine Lane, Reno, Nevada and doing business as Mill Street Auto. Mill Street Auto rented the Sunshine Lane property from RSIC.

RSIC is a federally recognized Indian colony organized pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 5123. It is the beneficial owner of the Sunshine Lane property; legal title is held by the United States Government in trust for RSIC.

Because Mill Street Auto sold cars on land held in trust for RSIC, it

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy case and the related adversary proceeding, Adv. No. 20-05004-btb. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

was obligated to pay RSIC 8.265% of the gross receipts of its sales, pursuant to § 11-20-200 of Ordinance No. 31 ("Ordinance 31") of RSIC's Sales and Use Tax Code (Title 11, Chapter 2 of the RSIC Law and Order Code (the "RSIC Code")).[3] This sales tax was due and payable monthly, on or before the last day of the next month after Mill Street Auto collected the tax from its customers. (Ordinance 31 § 11-20-250(1)). Mill Street Auto was required to file a return on a form for sales taxes and submit payment of the taxes due concurrently with the form. (Ordinance 31 § 11-20-250(2)).

If RSIC found a deficiency in the amount of tax paid, it was required to notify Mill Street Auto of the deficiency and to assess a penalty of the greater of 15% of the deficiency or $75 ("Late Penalties"). (Ordinance 31 § 11-20-255). If Mill Street Auto failed to make a sales tax return altogether, then RSIC was required to issue Mill Street Auto an estimate of the tax due ("Estimated Taxes") and, in addition to the Estimated Taxes, assess a penalty of the greater of 20% of the Estimated Tax or $100 ("Estimated Tax Penalties"). (Ordinance 31 § 11-20-260). If Mill Street Auto did not pay a tax deficiency or an Estimated Tax within ten days of receipt of notice of such deficiency or Estimated Tax, then interest at a rate of 1% per month

---

[3] The RSIC Code can be accessed on RSIC's website, https://www.rsic.org/rsic-services/court-services/tribal-ordinances/ (last visited on Apr. 12, 2022).

Section 372.800(1) of the Nevada Revised Statutes ("NRS") authorizes RSIC to "impose a tax on the privilege of selling tangible personal property at retail on the reservation or colony." The Nevada Department of Taxation does not collect taxes on sales made on lands held in trust for RSIC because RSIC imposes a sales tax equal to that which is provided by the Sales and Use Tax chapter of the NRS. *See* NRS § 372.805.

("Interest") would be charged until RSIC was paid in full. (Ordinance 31 § 11-20-261).

## B. The Bankruptcy Case and Adversary Proceeding

On January 7, 2020, the Debtor filed a chapter 7 petition, and Mr. Burke was appointed as Trustee.

Thereafter, the Trustee filed an adversary complaint against the Debtor, Reno Patio & Fireplaces, LLC, Mill Street Auto[4], and Mr. Taylor. The Trustee alleged that the defendants were each other's alter egos and sought substantive consolidation of their debts and assets. Pursuant to the parties' settlement of the adversary proceeding, the bankruptcy court ordered that the Glendale Avenue property and all monies owed to Mill Street Auto be treated as estate assets available to pay the debts of the Debtor and Mill Street Auto.

## C. The Claim Dispute

RSIC filed a $112,540.25 unsecured claim for Estimated Taxes, Estimated Tax Penalties, Late Penalties, and Interest owed to it by Mill Street Auto. It asserted the claim was entitled to priority status under § 507(a)(8), which applies to certain tax claims and related penalties owed to "governmental units."

The Trustee filed an objection to the claim, arguing that: (1) Mill Street Auto's sales tax liabilities arose out of its lease with RSIC and thus

---

[4] Although Mill Street Auto is a dba of Reno Patio & Fireplaces, LLC, it was named separately as a defendant in the adversary complaint.

must be capped under § 502(b)(6);[5] (2) RSIC's claim was not entitled to priority status because RSIC is not a "governmental unit" under § 507(a)(8); and (3) RSIC did not meet its burden to prove that it was entitled to the Estimated Taxes and Estimated Tax Penalties because the amounts are estimates of taxes owed rather than calculations based on actual gross sales receipts.

RSIC responded that the § 502(b)(6) cap is inapplicable because Mill Street Auto's sales tax obligations arose under Ordinance 31, not under the lease. RSIC also argued that it was a "governmental unit."

Regarding the amount of its claim, RSIC submitted an affidavit of its Tax and Revenue Department tax manager, Willett Smith. Mr. Smith attested that RSIC's $112,540.25 claim consisted of:

> (1) $5,704.52 as a Late Penalty for delinquent sales taxes due for June to September 2018;[6]
>
> (2) $2,665.12 as an Estimated Tax Penalty for Mill Street Auto's failure to file a sales tax return for April 2019;[7] and
>
> (3) $86,091.42 in Estimated Taxes, plus $17,218.28 in Estimated Tax Penalties, plus $860.82 in Interest for Mill Street Auto's failure to file sales tax returns and pay taxes for October 2019 through July 2020.

---

[5] Section 502(b)(6) limits the amount of a landlord claim for damages resulting from the termination of a real property lease.

[6] Mr. Smith explained that the Late Penalty totaled $9,704.52, but $4,000 was paid, leaving a balance of $5,704.52 owed.

[7] Mr. Smith explained that Mill Street Auto had paid the Estimated Tax for April

In reply, the Trustee agreed to the allowance of the $5,704.52 and $2,665.12 amounts claimed for 2018 and April 2019 as a general unsecured claim. But he again contended that the sales tax liabilities for October 2019 through July 2020 should be based on actual sales during the period. He also characterized both the Estimated Taxes and Estimated Tax Penalties as "penalties" that could not be afforded priority because they were not for actual compensatory losses under § 507(a)(8)(G).

After the claim objection hearing, the bankruptcy court entered its order overruling the objection and allowing the claim in full as an unsecured priority claim under § 507(a)(8) without issuing findings of fact or conclusions of law. The Trustee timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred when it overruled the Trustee's objection and allowed RSIC's unsecured priority claim.

## STANDARDS OF REVIEW

In the claim objection context, we review the bankruptcy court's legal conclusions de novo and findings of fact for clear error. *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000). "Under the de novo standard of review, we do not defer to the lower

---

2019 but not the associated $2,665.12 Estimated Tax Penalty.

6

court's ruling but freely consider the matter anew, as if no decision had been rendered below." *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir.1988) (citing *Exner v. FBI*, 612 F.2d 1202, 1209 (9th Cir. 1980)). Factual findings are clearly erroneous if they are "illogical, implausible, or without support in the record." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

We may affirm on any ground supported by the record. *See Black v. Bonnie Springs Fam. Ltd. P'ship (In re Black)*, 487 B.R. 202, 211 (9th Cir. BAP 2013) (citing *Shanks v. Dressel*, 540 F.3d 1082, 1086 (9th Cir. 2008)).

## DISCUSSION

On appeal, the Trustee initially contended that: (1) RSIC did not show that its estimated tax assessments bore any rational relationship to Mill Street Auto's historical sales; (2) RSIC did not comply with certain notice procedures required by Ordinance 31 to impose estimated tax liabilities for October 2019 through July 2020; and (3) the tax penalties did not merit priority under § 507(a)(8)(G). As we explain below, only the last of these arguments requires reversal.[8]

---

[8] The Trustee excludes from his appellate briefing his arguments that RSIC's claim must be capped under § 502(b)(6), must be denied priority status because RSIC is not a "governmental unit," and must be based on actual gross receipts rather than estimates. We need not address these waived arguments. *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017) (issue not argued in briefs is waived). We note, however, that the arguments are baseless. RSIC's claim arises under Ordinance 31 rather than under a lease termination; the Ninth Circuit has held that an Indian colony is a "governmental unit" under § 101(27), which defines the term for purposes of § 507(a)(8), *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1057 (9th Cir. 2004), *as*

7

**A. RSIC provided sufficient proof of its claim amount.**

**1. Burden of Proof**

A timely filed proof of claim constitutes prima facie evidence of the claim's validity and is deemed allowed unless a party in interest objects. § 502(a); Rule 3001(f). To overcome this presumption of validity, an objecting party must present "sufficient evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Lundell*, 223 F.3d at 1039 (internal quotation marks and citation omitted).

If the objector accomplishes this, then the burden usually reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd sub nom. In re Consol. Pioneer Mortg. Entities*, 91 F.3d 151 (9th Cir. 1996). This is so because "the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 21 (2000). And civil plaintiffs outside of bankruptcy typically bear the burden of proving their claims. *Bagley v. United States (In re Desert Cap. REIT, Inc.)*, BAP Nos. NV-13-1233-KiTaJu, NV-13-1250-KiTaJu, 2014 WL 3907972, at *11 (9th Cir. BAP Aug. 11, 2014).

But tax claims are atypical in this regard. Normally, tax law places

---

*amended on denial of reh'g* (Apr. 6, 2004); and, like other statutes such as NRS § 360.300, Ordinance 31 properly authorizes RSIC to assess an estimated sales tax if a person fails

the burden of proof on the taxpayer, which "reflects several compelling rationales: the vital interest of the government in acquiring its lifeblood, revenue; the taxpayer's readier access to the relevant information; and the importance of encouraging voluntary compliance by giving taxpayers incentives to self-report and to keep adequate records in case of dispute." *Raleigh*, 530 U.S. at 21 (citations omitted). Thus, the party objecting to a tax claim in bankruptcy often bears the burden of proof. *See, e.g., id.* at 17 (a trustee objecting to an Illinois tax claim bears the burden of proof); *Neilson v. United States (In re Olshan)*, 356 F.3d 1078, 1084 (9th Cir. 2004) (a party challenging a federal tax assessment has the burden of proving that the assessment is wrong); *In re USA Sales, Inc.*, 580 B.R. 852, 855 (Bankr. C.D. Cal. 2018) (a taxpayer generally bears the burden of proof with respect to challenging a tax assessment under California law).

Here, Ordinance 31 does not plainly state the burden of proof in disputes over Estimated Taxes and Estimated Tax Penalty determinations. But Ordinance 31 § 11-20-260 and RSIC's Tax and Revenue Department Administrative Regulations for Appeals ("Regulations") provide that a taxpayer must pay the assessed amounts within ten days of receipt of notice of the. [9] In that regard, the estimated tax amounts are presumptively valid. The Regulations require the taxpayer to seek reconsideration from

---

to file a return.

[9]The Regulations are included in Ordinance 31 which can be accessed on RSIC's website, https://www.rsic.org/rsic-services/court-services/tribal-ordinances/ (last visited on Apr. 12, 2022).

RSIC's tax manager by setting forth specific grounds for reconsideration substantiated by documentary evidence. If the tax manager does not grant reconsideration, then the taxpayer may request an administrative hearing at which the taxpayer may present evidence, inspect the evidence of the RSIC's Tax and Revenue Department, and cross-examine witnesses. If the administrative board denies relief, then the taxpayer may seek judicial review by the RSIC's Tribal Court. While the Regulations set forth these extensive instructions for the taxpayer to challenge an estimated tax amount, it seemingly places no responsibility on RSIC's tax manager to justify the assessment. Thus, it appears that the taxpayer bears the burden to disprove the validity of the assessment.

Further, Title 1 of the RSIC Code § 1-30-030 provides, in relevant part, that in matters not covered by controlling RSIC statutory law, Tribal Court case law, or Tribal customs, "the Tribal Court shall apply any laws of the United States which could be applied by any Courts of general jurisdiction of any state, and any regulations of any administrative agency of the United States which may be of general or specific applicability. . ." Thus, if and to the extent that RSIC relies on federal tax law to provide the applicable burden of proof in tax disputes, RSIC's tax assessments would be entitled to a presumption of correctness and the taxpayer would bear the burden to establish that the determination is "arbitrary, excessive or

without foundation."[10] *In re Olshan*, 356 F.3d at 1084 (quoting *Palmer v. United States*, 116 F.3d 1309, 1312 (9th Cir. 1997)).

### 2.    Application

Here, RSIC substantiated its claim with an affidavit by its tax manager setting forth a proper factual foundation for its assessment of sales taxes due. Under applicable law, the assessment was entitled to a presumption of validity, and the Trustee bore the burden of proof in challenging the validity of the assessment. He did not meet his burden.

The Trustee did not proffer any evidence to counter the evidence submitted by RSIC in support of its claim for Estimated Taxes and Estimated Tax Penalties. Rather, he argued that RSIC should be restricted to basing its calculation of tax liabilities on actual sales receipts and not on estimates of what the sales taxes should have been had sales tax returns been filed. He argued RSIC had not only the authority, but a duty, to audit Mill Street Auto to do so. His arguments are completely at odds with Ordinance 31. Nothing in Ordinance 31 required RSIC to conduct an audit as a prerequisite to calculating the estimated tax liabilities. In fact, there are no established methodologies for calculating the estimated tax liabilities. Ordinance 31 § 11-20-260 simply provides that RSIC "shall make an

_____

[10] Nevada Administrative Code § 360.130(1) also places the burden of proof on the taxpayer in all tax assessment disputes. However, the RSIC Code has not incorporated this Nevada Code section, and RSIC Code § 1-30-040 provides that the Tribal Court shall not apply Nevada law unless specifically incorporated into the RSIC Code by ordinance.

estimate of the tax due" if a taxpayer fails to make a return. In short, the Trustee's argument was squarely contradicted by the undisputed evidence before the bankruptcy court. Thus, the court properly rejected it.

The Trustee also initially argued that RSIC's Estimated Taxes and Estimated Tax Penalties bore no rational relation to historical sales. As the Trustee conceded at oral argument, however, his counsel's argument is based on several misapprehensions of the undisputed evidence.

In short, the Trustee's counsel had argued that the "estimated tax" was wildly inflated over historical tax information presented by RSIC in the proof of claim. This argument, however, erroneously equated a small amount of unpaid prepetition tax penalties with the evidence of actual reported taxes during portions of the prepetition period. Thus, as the Trustee acknowledged at oral argument, "taxes did not jump $120,000 in one year." Instead, the monthly average sales tax for the reported months in evidence was $15,604.48. By contrast, RSIC's claim for Estimated Taxes was less than $11,000 a month. Thus, the Trustee's argument regarding the unreasonableness of RSIC's claim for Estimated Taxes and Estimated Tax Penalties fails because the bankruptcy court's implicit finding of reasonableness was adequately supported by the record and neither illogical nor implausible.[11]

---

[11] The bankruptcy court was required to make findings of fact "sufficient to enable a reviewing court to determine the factual basis for the court's ruling." *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 919 (9th Cir. BAP 2011) (citing *Vance v. Am. Haw. Cruises, Inc.*, 789 F.2d 790, 792 (9th Cir. 1986)); *see also* Rule 9014(a), (c)

**B.**     **The Trustee waived his argument that the Estimated Tax liabilities are invalid under RSIC's notice procedures.**

The Trustee next asserts that RSIC did not send written notification of the "estimated tax due along with the automatic penalty fee and of the right to appeal" following Mill Street Auto's failure to make its sales tax returns for October 2019 through July 2020 as required by Ordinance 31 § 11-20-260. He concludes that this alleged oversight invalidates RSIC's claim and requires reversal.

The Trustee waived this issue by failing to raise it before the bankruptcy court. *See Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000). We disagree with the Trustee that we may consider the issue because it is one of law and either does not depend on the factual record or the record has been fully developed. *See El Paso City v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.)*, 217 F.3d 1161, 1165 (9th Cir. 2000). It is a factual issue, and the pertinent record has not been developed. The Trustee points to no evidence in the record unequivocally indicating that RSIC failed to notice its estimated tax amounts. Rather, he advocates for reversal based on his conjecture that RSIC must not have provided notice because it did not submit proof of such notice in response to his

---

(incorporating Rule 7052, which in turn incorporates Civil Rule 52). It made no findings of fact. But we may resolve the appeal because, as set forth above, the record provides us with "a complete understanding of the issues . . . [and] there can be no genuine dispute about omitted findings." *In re Veal*, 450 B.R. at 919-20 (quoting *Gardenhire v. Internal Revenue Serv.*, 220 B.R. 376, 380 (9th Cir. BAP 1998), *rev'd on other grounds*, 209

claim objection. But there was no reason for RSIC to submit proof of its compliance with its notice procedures when the Trustee never argued that the claim was invalid for a failure to provide required written notice.

Based on the foregoing, we find no error in the bankruptcy court's allowance of RSIC's claim for Estimated Taxes and Interest as an unsecured priority tax claim under § 507(a)(8).

## C.      RSIC's Late Penalties and Estimated Tax Penalties are not entitled to priority.

A penalty related to a tax claim specified in § 507(a)(8) is entitled to priority only to the extent that it is in compensation for actual pecuniary loss. § 507(a)(8)(G). "[A] percentage-based penalty that makes no reference to specific costs indicates an intent to punish, rather than to compensate." *Wash. v. Hovan, Inc. (In re Hovan, Inc.)*, 96 F.3d 1254, 1258 (9th Cir. 1996). And "tax penalties levied in addition to interest typically are punitive." *Id*.

Here, nothing in the record indicates that RSIC's automatic percentage-based Late Penalties and Estimated Tax Penalties are tethered to any specific costs incurred by RSIC. Further, they were assessed in addition to the Interest. Thus, the penalties are punitive in nature and not in compensation for actual pecuniary loss. We conclude that the bankruptcy court erred in determining that the penalties merited priority status under § 507(a)(8)(G). In that limited regard, we reverse.

---

F.3d 1145 (9th Cir. 2000)).

## CONCLUSION

Based on the foregoing, we REVERSE the bankruptcy court's determination that the Tax Penalties were entitled to priority status under § 507(a)(8). In all other respects, we AFFIRM.